ROSENTHAL PAPER CO. v. NATIONAL FOLDING BOX & PAPER CO.

(Supreme Court, Appellate Term, First Department.   May 9, 1916.)

PATENTS ☞218(1)—LICENSE—ASSIGNMENT.

Where the owner of a patent licensed defendant to manufacture under the same for a period of five years, and then transferred the patent to plaintiff, defendant, having manufactured articles under the license without molestation for the period agreed upon, is liable to plaintiff for the royalty; the assignment by the owner not amounting to a repudiation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 330, 333, 336–338; Dec. Dig. ☞218(1).]

Appeal from City Court of New York, Special Term.

Action by the Rosenthal Paper Company against the National Folding Box & Paper Company. From an order and judgment of the City Court (91 Misc. Rep. 405, 155 N. Y. Supp. 367), setting aside verdict for plaintiff and dismissing the complaint, plaintiff appeals. Reversed, and verdict reinstated.

Argued March term, 1916, before LEHMAN, PENDLETON, and WHITAKER, JJ.

Joseph A. Arnold, of New York City, for appellant.

Walter D. Edmonds, of New York City (Franklin M. Clark, of New York City, of counsel), for respondent.

WHITAKER, J.   The action was brought to recover royalties due under a written contract made March 1, 1909, between the plaintiff's assignor, Isse Seligstein, and the defendant, the National Folding Box & Paper Company. The contract granted to the defendant an exclusive license to make and sell folding boxes in certain New England and Middle States for a period of five years from March 1, 1909, under

letters patent No. 906,138, issued December 8, 1908. The defendant agreed to pay for such privilege stipulated royalties, which, however, were to be not less than $500 a year. The plaintiff's assignor was the owner, but not the inventor, of the patent.

The amended answer contains seven defenses and four counterclaims. The first counterclaim corresponds to the first defense, and alleges a breach of an independent covenant in the contract to protect the patent against substantial infringements. The second counterclaim corresponds to the second defense. No evidence was introduced thereunder. The same is true of the third counterclaim and third defense, which relate to the same subject-matter. The fourth defense alleges a modification of the contract. That issue was decided in the appellant's favor by the verdict of the jury under appropriate instructions. The fifth defense, which corresponds to the fourth counterclaim, sets up in another form a breach of the covenant above referred to. The sixth defense raised the question of the plaintiff's right to sue. The seventh defense took issue upon the fact of assignment.

At the close of the plaintiff's case the defendant moved to dismiss the complaint, on the grounds that the contract was not assignable, and that by assigning the patent Seligstein put it out of his power to perform his covenant to protect the patent against infringements. The trial court· denied the motion at that time. At the end of the whole case the defendant renewed its motion to dismiss the complaint on the same grounds urged at the close of the plaintiff's case. The court again denied the motion, and also denied the defendant's motion to direct a verdict in its favor.

The jury found a verdict for the plaintiff appellant for $1,840.73, the difference between five years' minimum royalty of $500 a year, with interest, and the amounts paid by the defendant from time to time under the contract. At the conclusion of the trial the defendant made the usual motion to set aside the verdict, and also to dismiss the complaint. The court stated that it had no disposition to consider the motion upon the facts, but would take it under advisement upon questions of law. Thereafter the court set aside the verdict and dismissed the complaint "solely upon the ground that Seligstein violated the contract of license by assigning the patent."

The verdict of the jury under the very fair and clear charge of the court, we think, settled the following facts:

The plaintiff's assignor, Isse Seligstein, and defendant, entered into the following contract:

"Memoranda of agreement between Isse Seligstein, of St. Louis, Mo., and the National Folding Box & Paper Company, a corporation, organized under the laws of the state of New Jersey and having its principal office and place of business at New Haven, Conn.

"Whereas, said Seligstein is the sole owner of letters patent 906,138, issued December 8, 1908, in the name of Frank H. Houghland, of St. Louis, Mo., assignor, for a patent folding clothing, millinery or suit box, or any box for any purpose made under the claims of said patent, the boxes manufactured under said patent being known by the trade-name of the 'Lightning' box; and

"Whereas, the said the National Folding Box & Paper Company is desirous of acquiring the exclusive right to manufacture and sell the said the Lightning box within the border lines of the following states of the United States of

America: Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, New York, Pennsylvania, New Jersey, Delaware, Maryland, and the District of Columbia:

"Now, therefore, it is mutually agreed between the said Seligstein and the National Folding Box & Paper Company that the said Seligstein hereby sells to said the National Folding Box & Paper Company the exclusive right to manufacture and sell boxes under said patent, including any improvements made thereon, within the territory above described, upon the following terms and conditions:

"(1) The National Folding Box & Paper Company agrees to pay the said Seligstein a royalty of one dollar ($1.00) per thousand boxes up to an average daily sale of twenty (20) thousand boxes per day, per year of 300 days, and on all boxes sold in excess of said twenty (20) thousand boxes per day, per year of 300 days, the said the National Folding Box & Paper Company agrees to pay a royalty of seventy-five cents (75c.) per thousand boxes; but it is expressly understood that the payment by the said the National Folding Box & Paper Company to said Seligstein for the right to manufacture and sell boxes under said letters patent shall not be less than the sum of five hundred dollars ($500.00) for each and every year during the life of this contract.

"(2) The said Seligstein promises and agrees that he will faithfully protect said letters patent from any and all substantial infringements of said letters patent.

"(3) The said Seligstein further agrees that during the life of this contract he will not sell within the territory above described any box manufactured under said letters patent No. 906,138, nor any other clothing, millinery, or suit box, and further that he will not during the life of this contract sell any rights for any clothing, millinery, or suit box to any one for the territory heretofore described.

"(4) The terms of this contract shall be five (5) years from and after the 1st day of March, A. D. 1909, with the right on the part of said the National Folding Box & Paper Company to extend this contract upon the same terms and conditions for a further term of five (5) years thereafter, and at the expiration of the second five-year term, the said the National Folding Box & Paper Company shall then have the right and option to further extend this contract on the same terms and conditions for the full life of the patent; it being understood that at each renewal period the said the National Folding Box & Paper Company shall give to the said Seligstein at least sixty (60) days' notice of its intention to renew and continue said contract."

The defendant continued to use the exclusive right to make and sell the boxes for the full term of the contract, and paid the royalties therein provided for, which were less than $500 a year. The verdict of the jury was for the difference. There were no substantial infringements of the patent, and no violation of the express terms of the contract; and the court has held that the assignment of the letters patent by Seligstein to the plaintiff, as between themselves, was valid, in which we fully concur. The court bases its decision and opinion that plaintiff cannot recover "solely upon the ground that Seligstein violated the contract of license by assigning the patent" to plaintiff. The court expressly states that it does not pass upon the question whether the verdict is against the weight of evidence respecting the alleged infringement of the patent.

The only question to be passed upon, therefore, by this court, is: Did the assignment by Seligstein to plaintiff, of itself, breach the contract, and absolve the defendant from liability. In the first place, it has been established that the defendant continued to enjoy the benefits of the contract without molestation of any kind for its full period of five years; and whether it was a losing contract or a profitable one

is immaterial. We are unable to agree with the opinion of the learned justice of the City Court for the following reasons:

The defendant had full benefit of the contract for its entire period. Seligstein neither expressly repudiated the contract, announced his determination not to perform, nor made performance impossible. Gray v. Green, 9 Hun, 336; McIntosh v. Miner, 37 App. Div. 483, 55 N. Y. Supp. 1074. The jury having found that there were no *substantial* infringements, the defendant cannot claim a breach of the contract, which has been fully performed by both parties, and all the benefits of which defendant had fully enjoyed. There can be no anticipatory or other breach of a contract which has been fully performed.

All the other points raised by the parties are subservient to the question of a breach, and inasmuch as there was no breach they need not be considered.

Order and judgment reversed, with costs, and verdict reinstated, with costs. All concur.